UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIA BARRERA,<br><br>    Plaintiff,<br><br>    v.<br><br>COMCAST HOLDINGS CORPORATION,<br><br>    Defendant. | Case No. 14-cv-00343-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY CASE** |

Now before the Court is Defendant Comcast Holdings Corporation's ("Defendant") motion to stay Plaintiff Sonia Barrera's ("Plaintiff") action under the doctrine of primary jurisdiction. Pursuant to Civil Local Rule 7-1(b), the Court found the matter appropriate for resolution without oral argument, and vacated the hearing previously scheduled for May 19, 2014. For the reasons discussed below, the Court GRANTS Defendant's motion and STAYS the case.

**BACKGROUND**

Plaintiff alleges that Defendant and its agents placed calls to her cellular telephone using an automatic dialing system and/or a prerecorded voice in an attempt to collect an overdue balance from a different person (the "Debtor"), whom the Plaintiff does not know, and for which Plaintiff is in no way responsible. Compl. ¶¶ 8-11. When the calls began, Plaintiff informed Defendant that the Debtor was unknown to her and unreachable at her telephone number; Plaintiff further instructed Defendant to remove the cellular telephone

1  number from the account and to cease all communications with her.  *Id*. ¶ 12; *see also*

2  Barrera Decl. ¶¶ 2-4, Docket No. 26-1 (same).  Defendant – despite knowing that the

3  Debtor could not be reached at Plaintiff's cellular telephone number and despite Plaintiff's

4  request to stop calling – continued calling Plaintiff at a rate of up to two calls per day, for

5  several days per week for successive weeks, until she obtained the assistance of counsel to

6  ultimately stop the calls.  *Id*. ¶¶ 13-14; *see also* Barrera Decl. ¶¶ 5-6.   Defendant avers:

7  that during the time period alleged in Plaintiff's complaint, a third-party vendor engaged

8  by Defendant called the phone number assigned to Plaintiff for debt collection purposes;

9  that Defendant did not intend to call Plaintiff; and that the Debtor whom Defendant

10 intended to reach is a current subscriber of Defendant's services who provided that cellular

11 telephone number to Defendant and "reasonably evidenced prior express consent" to be

12 contacted at that number, including for debt collection.  Jensen Decl. ¶¶ 3-5, Docket No.

13 24-1.  Based on these allegations, Plaintiff brought suit under the Telephone Consumer

14 Protection Act ("TCPA"), 47 U.S.C. § 224 *et seq.*, the Rosenthal Fair Debt Collection

15 Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq.*, and for invasion of privacy

16 by intrusion upon seclusion.

17

18 **LEGAL STANDARD**

19      "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

20 complaint without prejudice pending the resolution of an issue within the special

21 competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110,

22 1114 (9th Cir. 2008).  This "prudential" doctrine enables a court to determine that "an

23 otherwise cognizable claim implicates technical and policy questions that should be

24 addressed in the first instance by the agency with regulatory authority over the relevant

25 industry rather than by the judicial branch."  *Id*. (citing *Syntek Semiconductor Co., Ltd. v.*

26 *Microchip Tech. Inc.*, 307 F.3d 775, 782 (9th Cir. 2002)).  "[I]t is to be used only if a claim

27 requires resolution of an issue of first impression, or of a particularly complicated issue

28 that Congress has committed to a regulatory agency, and if protection of the integrity of a

2

regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (citations and quotation marks omitted).

A court traditionally weighs four factors in deciding whether to apply the primary jurisdiction doctrine: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration. *Syntek*, 307 F.3d at 781-82. If applicable, the court can either stay proceedings or dismiss the case without prejudice. *Id.* at 782. In considering these factors, the "primary jurisdiction doctrine is designed to protect agencies possessing 'quasi-legislative powers' and that are 'actively involved in the administration of regulatory statutes.'" *Clark*, 523 F.3d at 1115 (citation omitted); *see also id.* at 1115-16 (affirming referral to Federal Communications Commission ("FCC") on issue of whether FCC regulation applied to emerging technology).

**DISCUSSION**

Defendant argues that the doctrine of primary jurisdiction applies because the very issue on which Plaintiff's claims are predicated – liability under the TCPA when a wireless telephone user has changed phone numbers – is currently before the FCC. Plaintiff argues that primary jurisdiction does not apply, and even if it did, her other claims or limited discovery should be allowed to proceed. The Court concludes that the primary jurisdiction doctrine applies here, and therefore GRANTS Defendant's motion to stay the case.

The Second, Third, and Fourth *Syntek* primary jurisdiction factors are met here because Congress has placed the uniform interpretation and comprehensive enforcement of the TCPA within the primary jurisdiction of the FCC. As described by the Sixth Circuit:

> Congress vested the FCC with considerable authority to implement the [TCPA]. The Act gives the agency power to "prescribe regulations to implement" the legislation, 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2), to exempt calls from the requirements of the Act, *id.* §§ 227(b)(2)(B), 227(b)(2)(C) . . . and to enforce the provisions of the Act and its accompanying regulations, *see, e.g.*, 22 FCC Rcd. 19396 (Nov. 9, 2007); 20

3

> FCC Rcd. 18272 (Nov. 23, 2005). In addition to these law-making and law-enforcing powers, the FCC has interpretive authority over the [TCPA], *see Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 . . . (1984), and its accompanying regulations, *see Auer v. Robbins*, 519 U.S. 452, 461 . . . (1997) . . . .

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010). In short, "Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

The First *Syntek* primary jurisdiction factor is also met because resolution of the central issue in this case is presently before the FCC in two pending petitions. On January 16, 2014, United Healthcare Services, Inc. ("United Healthcare") petitioned the FCC seeking an expedited declaratory ruling clarifying that TCPA liability does not apply to informational, non-telemarketing autodialed and prerecorded calls to wireless numbers for which valid prior express consent has been obtained but which, unbeknownst to the calling party, have subsequently been reassigned from one wireless subscriber to another. *See* United Healthcare Petition at 1, Def.'s Req. for Judicial Notice, Ex. A, Docket No. 25-1.[1] The FCC is currently seeking public comment on the United Healthcare Petition.[2] Additionally, on February 11, 2014, ACA International ("ACA") filed a petition with the FCC supporting the United Healthcare Petition and requesting that the FCC recognize a safe harbor for autodialed "wrong number" non-telemarketing debt collection calls to wireless numbers. *See* ACA Petition at 15-17, n. 46, Def.'s Req. for Judicial Notice, Ex. B, Docket No. 25-2. A safe harbor, ACA contends, is necessary to prevent holding a debt collector liable for a "good faith" call to a number for which it had appropriate consent at one point, but which now belongs to someone else, simply because the previous consumer

---

[1] The Court grants Defendant's Request for Judicial Notice, Docket No. 25, and judicially notices Exhibits A and B attached thereto. Fed. R. Evid. 201.

[2] *See* FCC, *Public Notice, Consumer & Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Ruling from United Healthcare Services, Inc.*, CG Docket No. 02-278 (Feb. 6, 2014), *available at* http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db0206/DA-14-149A1.pdf.

4

1  never updated his or her new information and telephone number. *Id*. at 15.  Thus, the
2  United Healthcare and ACA Petitions address whether there is liability under the TCPA
3  for the same conduct for which Plaintiff seeks to hold Defendant liable.
4          In situations where an agency's pending decision applies to the precise issue
5  presented by the litigation, application of the primary jurisdiction doctrine to stay the case
6  is appropriate. *See, e.g.*, *Hart v. Comcast of Alameda*, No. 07-6350, 2008 WL 2610787, at
7  *2 (N.D. Cal. June 25, 2008) (finding FCC had primary jurisdiction and staying case
8  where two petitions had been filed on the precise issue before the court, and the FCC had
9  announced it would seek public comment); *Clark*, 523 F.3d at 1113-14 (holding that the
10 FCC had primary jurisdiction over the plaintiff's claim because the FCC's notice of
11 proposed rulemaking sought comment on the precise issue addressed before the court).  In
12 fact, in *Matlock v. United Healthcare Services, Inc.*, another district court invoked the
13 primary jurisdiction doctrine and stayed a similar TCPA action involving calls to a
14 "reassigned" cellular telephone number.  No. 2:13-CV-02206-MCE-EF, 2014 WL
15 1155541, at *1 (E.D. Cal. Mar. 20, 2014).  In that case, the plaintiff asserted that the
16 defendant violated the TCPA when it initiated calls to his cellular phone without his
17 consent.  The defendant – United Healthcare – requested that the court stay that case based
18 on the above-referenced petition that it filed with the FCC. *Id*. at *1-2.  The *Matlock* court
19 granted a stay on primary jurisdiction grounds because the defendant's petition was
20 already before the FCC and comments were due in the near future; judicial economy
21 weighed against issuing a decision that may be undermined by an anticipated ruling of the
22 regulatory body; the violation alleged in that case was not ongoing so the plaintiff would
23 suffer no further damages during a stay; and because the early stages of litigation militated
24 against potential prejudice plaintiff might suffer by any delay. *Id*. at *2.
25         Here, the Court likewise finds that a stay in this case is warranted under the primary
26 jurisdiction doctrine.  Congress has placed the interpretation and enforcement of the
27 TCPA's provisions within the primary jurisdiction of the FCC, and a stay of this case
28 would promote uniformity in the administration of the TCPA because a central issue

1  presented in this case – whether liability under the TCPA attaches for non-telemarketing
2  calls placed to reassigned or wrong wireless telephone numbers – is already under
3  submission before the FCC in two pending petitions.
4        Plaintiff, in opposition, argues that the FCC's resolution of this issue will not be
5  relevant and will have "little to no" effect on the outcome of the case.  Opp'n at 2.
6  According to Plaintiff, because Defendant continued to call after Plaintiff notified
7  Defendant that it had the wrong number, any finding that the TCPA exempts good faith,
8  non-telemarketing calls would not apply to her case because Defendant had notice that
9  calls to her were placed in error.  However, the ACA Petition specifically requests that the
10 FCC create a "safe harbor" for such wrong number non-telemarketing calls, the purpose of
11 which would "ensure that callers would have a reasonable opportunity to comply with the
12 rules."  ACA Petition at 16.  Thus, it is conceivable that such a safe harbor exception, if
13 created, could exempt the conduct alleged if Defendant or the debt collector placed the
14 calls within the window for reasonable compliance.  Additionally, Plaintiff argues that her
15 state law Rosenthal Act and invasion of privacy claims are not dependent on the TCPA
16 claim.  The Court, however, finds that these claims are likely intertwined.  If the FCC finds
17 a "good faith" exception exists under the TCPA, whether Defendant here acted with good
18 faith under the TCPA would potentially be relevant to Defendant's defense of the
19 Rosenthal Act and the invasion of privacy claims, which require the Court to consider the
20 intentional quality of the Defendant's act and the Defendant's motives and objectives,
21 respectively.  *See* Cal. Civ. Code § 1788.30(e) (eliminating civil liability under the
22 Rosenthal Act "if the debt collector shows by a preponderance of evidence that the
23 violation was not intentional and resulted notwithstanding the maintenance of procedures
24 reasonably adapted to avoid any such violation."); *Baughman v. State of California*, 38
25 Cal. App. 4th 182, 190 (1995) (citation and internal quotation marks omitted) (in analyzing
26 an invasion of privacy claim, a court considers, among other things, "the context, conduct
27 and circumstances surrounding the intrusion as well as the intruder's motives and
28 objectives").  Accordingly, the Court concludes that Plaintiff's arguments do not alter the

conclusion that a stay is warranted pending the FCC's ruling.

Lastly, Plaintiff also argues that she will be prejudiced if the stay is granted because the FCC may take a long time to rule on the two pending petitions, and that her ability to obtain discovery may be harmed in the intervening period of the stay. While Plaintiff contends that the FCC's two most-recent TCPA-related rulings were pending for seven months and two years, respectively,[3] the Court does not find that potential delay in awaiting a definitive ruling from the FCC on this highly relevant issue outweighs issuance of the stay. Issuing a decision in the interim that may be undermined by an anticipated ruling of the FCC would run counter to the policy animating the primary jurisdiction doctrine itself. As to discovery prejudice, as noted by Defendant, Plaintiff is likely in possession of relevant evidence such as her own telephone records. The parties are under reciprocal obligations to preserve evidence. *See* Fed. R. Civ. P. 26(f). To the extent Plaintiff is concerned that any third-party vendor used by Defendant for debt collection purposes is unaware of the pending litigation, such that its relevant records may become unavailable during the pendency of the stay, the Court trusts Defendant will take adequate precaution to ensure that its agent – the debt collection agency entrusted to collect on the Debtor's delinquent bills – preserves relevant documents related to this case. In the event that Defendant cannot assure the Court that the debt collection agency in this case will preserve relevant records, Defendant shall notify the Court within 21 days of this Order, and the Court shall craft an appropriate, limited remedy to ensure adequate document preservation during the pendency of the stay.

//

//

//

---

[3] See Opp'n at 5 (citing *In the Matter of Cargo Airline Ass'n Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 59 Communications Reg. (P&F) 1509 (F.C.C. Mar. 27, 2014) & *In the Matter of Groupme, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 59 Communications Reg. (P&F) 1554 (F.C.C. Mar. 27, 2014)).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's motion to stay. Not later than 180 days following the date this Order is filed, the parties are directed to file a Joint Status Report advising the Court of the status of the proceedings before the FCC.

**IT IS SO ORDERED.**

Dated: 5/12/14

_____

THELTON E. HENDERSON
United States District Judge